Yes, good morning. May it please the court, Ezequiel Cortes, on behalf of Antonio Rico-Gonzalez, I would like to reserve two minutes for rebuttal. There are two issues in my case. They are both very straightforward. I will devote hopefully 20 percent of my time to the first and the rest to the second. The first issue, the government, as you can tell from their brief, has relied 100 percent on this court's ruling in Parga-Rosas. They say that Parga-Rosas does not require proof of a reentry in a 1326 case. Because the government's heart rests in Parga-Rosas, I'd like to quote from it directly to the court. At page 1214 of Parga, this court stated, Parga-Rosas argues that voluntariness of reentry has been recognized as an essential in non-border cases, as well as pointing to United States v. Quintana Torres, which is our other case that we rely upon. And this court went on to say, where we stated that voluntariness of the return is an element of the crime and, as such, must be proved beyond a reasonable doubt by the prosecution. That is our argument. And that's what this court said in Parga-Rosas. It must be proved at trial. This court went on to note the Quintana Torres case upon which we rely, and this court stated, however, Quintana Torres involved of the evidence. This court was trying to distinguish that case in the Parga-Rosas case. Unfortunately for the government, it is insufficiency of the evidence that's at issue here before this court in this case. The denial of the Rule 29 by the district court, Judge Thompson. So Parga-Rosas hurts the government, does not help the government. If I may refer now to the Quintana Torres case upon which we rely. And this court in Quintana noted the following. At page 1200, we added that the voluntary element of the crime consists in the return to the United States that is prohibited by the statute. Therefore, the voluntariness of the return is an element of the crime. And as such, must be proved beyond a reasonable doubt by the prosecution. That's what this court held in its prior case and adopted in Parga-Rosas. So the state of the law in the Ninth Circuit right now is as it's stated in these two separate opinions. But there's another passage in Quintana that helps us a great deal. Because the government is arguing before you today that they don't have to prove it at trial. They don't have to prove a voluntary reentry. In Quintana Torres at 1199, this court specifically noted that the Quintana Torres case was a found-in case, a 1326 found-in case, not attempted reentry. It noted the following, which is what the government argues today. This court said the government argues that it did not have to prove that Quintana intentionally reentered this country. This court noted that cannot be right. There is no crime without an intentional act of some kind. But, counsel, haven't we stated that that issue only comes into play when there are circumstances under which the voluntariness of the entry is called into question? You did. And you did in Parga-Rosas. And in Parga-Rosas, this Court went to great lengths to distinguish those cases that had that element, that factual element, where there could be an issue regarding the voluntariness of the reentry. Because in most other cases, there were confessions. And the government offered those confessions at trial. And from those confessions, it was pretty reasonably clear that the person at issue confessed to the reentry. Or if there's an inference that the entry was voluntary, if he's found, you know, within the interior of the country as opposed to right at the border. So what is your argument specifically regarding the facts of your case that you think takes it outside those rulings? Thank you. At the heart of our case, and I almost hesitate to put it that way, but at the heart of the case is the second issue. This is an illegal reentry case, not an illegal entry case. So if the government proved by statements from the defendant an illegal entry, it doesn't get us anywhere. They have to prove an illegal voluntary reentry. What happened at trial here, for the government's convenience, we entered into written stipulation. That written stipulation was prepared by the government, was orchestrated by the government, and was sought by the government. And that written stipulation required specific issues. As you know, 1326 cases. Let's talk about that, Counsel. I'm sorry? Let's talk about that. You quoted that twice in your brief, and you left out the part that referred to item K-10. Was there a particular purpose of leaving K-10 out both times you quoted that? I didn't, Your Honor. The government relies on K-10, and I thank you for asking. Why don't we read it? Counsel, I ask you, is there a particular reason when you purported to quote that to us that you left K-10 out of the stipulation? No, you mean mention the fact that it was? When you quoted it, you quoted and you said the stipulation talked about comparisons between K-1 and 2, 3, 4, 5, 6, 7, 8, 9, and 11. Yes. You left out 10. Stipulation did cover 10. Thank you, yes. And I'll address K-10 because the government heavily relies upon it. Then I'll get why I didn't mention it first. But K- Counsel, I ask you, is there a reason you didn't, when you purported to quote that to us, that you left K-10 out of the quote? Yes, because it had nothing to do with the alleged prior deportations. K-10 specifically addresses February 14, 2002. That's the day your client came in and was fingerprinted. Is that true? That is not before the Court. Let me read K-10 for you. And that's a That's the date your client was fingerprinted, is it not? I'm not sure, Your Honor. I'm not trying to say that K-10 says that he was fingerprinted on 2-14-2002. No, it doesn't say that. What do you think it says? I don't think what it says. It says what it says. Excerpt of record 33. My excerpt of record is stipulation. And I quote. Counsel, by the way, since you don't seem to understand what I'm trying to say to you When you purport to quote something to the Court, you don't leave parts of it out just because you don't think it's important. Do you understand that now? I understand that, Your Honor. Well, then you don't do that when you purport to quote to this Court. I'm trying to read it to you, Your Honor. And I apologize. Counsel, I'm telling you about your brief, which on two separate occasions omitted the reference to K-10. Yes. And didn't put an ellipsis, just omitted it. Yes. One does not quote things that way, Counsel. I understand, Your Honor. The reason why I didn't quote it directly was because they had nothing to do with the prior deportations, which were the documents at issue. But if you allow me to read K-10 for you verbatim. You don't have to read it. I have it in front of me. As you can tell, nowhere in there does it say that it was the defendant at trial who was being imprinted. It says, bearing the name of Antonio Rico Gonzalez. Correct. Also taken on 214. Is that correct? It says one inked fingerprint card bearing the name Antonio Rico Gonzalez. Yes. The miscellaneous number AR401695818, taken by the U.S. Border Patrol, San Diego, California, employee ID number C-169, dated 214-202. It doesn't say it was taken from the defendant at trial. That is, that the Antonio Rico Gonzalez that appeared on that fingerprint card was the same person, the same individual at trial before the district court. K-1. You say that K-1 was not taken from this gentleman either? It doesn't say so, Your Honor. The stipulation has to be taken as explicitly drafted. And it says one inked fingerprint card bearing the name Antonio Rico Gonzalez, taken by the undersigned on 827-01. It does not say from the defendant in this case. I understand your point, Counsel. And I'm sorry if I offended the Court. Well, it's not a question of offense. It's a question of doing proper work when you're citing things to the Court, of not leaving out things just because you don't feel you want to put them in. Your Honor, the government didn't quote the passages from the two cases that I just cited to this Court this morning. They quoted parts of PARGA that helped them. Counsel, we're not talking about what the government did. I'm talking about what you did in purporting to quote a stipulation of this Court. I'm sorry. You're right. The issue in this case, the factual issue in this case, and it is a fact, that the government at closing argument after the Rule 29 was made for the very first time argued that this was a typographical error. That is not a fact before the Court. I understand your argument is it wouldn't matter if it was a factual, it was an error or not, would it? No, it wouldn't, because there's no proof at trial that the individual at trial, on trial, was the same Antonio Rico that was reported previously. I understand. Now, again, I apologize for my the way I did. Your time is up, Counsel. You wanted to save a minute for rebuttal. Yes, I did. Thank you. All right. Good morning. May it please the Court. Patrick O'Toole on behalf of the United States. Your Honors, this case is controlled by the case the defense counsel said, Pargorosis. This Court cannot have been clearer in that case that absent some evidence of official restraint or involuntary entry, which we do not have in this case, the case as pleaded was legally sufficient and it was factually sufficient. And this is not an official restraint case. There's no evidence of that whatsoever. This particular individual was found on the American side of the border, approximately one mile from the border. It wasn't a case where he was observed by human eye, by binoculars. It's not even the more difficult case where there were sensor alerts running along the border. He was found in the United States, on the American side, undisputed, no contrary evidence. So any of the discussion in some of the cases that talk about the government having to prove an entry or a voluntary entry simply is not involved under the facts of this particular, under the facts of this particular case. And Pargorosis controls, along with Castanedas-Garcia, quoting verbatim from Pargorosis 238 F3D 1209 at 1212. Pargorosis next contends that the indictment failed the State in defense because it did not allege that he voluntarily reentered the United States after deportation. That's the exact same language that we have in this case. It's the exact same language. Defense counsel has not contended. Otherwise, he couldn't and he could not contend otherwise relative to the facts relative to official restraint. The two doctrines that cause problems in this area, difficulty depending on the facts, are official restraint, which we don't have, and where an entry is involuntary, again, which we don't have. But even the entry cases are different than the founding cases. And the reason for that was disposed of by this Court in Quintero-Torres 235 F3D 1197, where the Court says, and I'm quoting verbatim towards the bottom of the analysis, alternatively, voluntarily remaining in the country after an involuntary entry satisfies the statute. And while that isn't involved in this particular case, the reason why that is important, you can have somebody that fell asleep, you can have somebody who was thrown across the border involuntarily, you can have somebody who was kidnapped. But once they discover their status, once they wake up, once they the kidnappers decide to let them go, they're not allowed to then remain in the country indefinitely, move northward and work. They don't have a free pass because their manner of entry might have been involuntary. And that's why the Court specifically stated, alternatively, voluntarily remaining in the country after an involuntary entry satisfies the statute. So that's an additional reason why you don't necessarily need to plead entry or get into the voluntariness of the entry, depending on the facts. But, again, we don't have that in this case at all. The second case, so legally I think the case is rather simple. Factually, it's rendered a little bit more difficult because there was a typographical area, area of error. I'm not sure what the Court, this particular Court, needs to do about that, but frankly ---- But the counsel said it doesn't matter if it's a typographical error or not. Well, it doesn't. And the reason why it doesn't, and I think Your Honor was focusing on it, was because of this. We have S.E.R. 5, Government Supplemental Excerpts of 5. That is the warrant of removal and deportation. What's critical about that is that has the defendant's picture on it. Admitted in the evidence, the Court sees it, and we have a fingerprint on that, and we have the expert testimony that this fingerprint matched the fingerprint that he took, and it matched all the other fingerprints that were taken. So regardless of whether the government slipped and it was or was not a typographical error on 827-01 instead of 827-02, we have the same name, we have a picture, we have the signature matching the other documents. So they internally are consistent, and whether the judge had to have found him guilty on that is a different issue, but there clearly was sufficient evidence to find him So if K-1 matches K-4 and K-1 matches K-10, that's the end of it. That's right. That basically disposes of it. In K-10, again, circumstantially, while it would have been better for the government to have said, yes, that's the guy we fingerprinted on 214, there was some evidence that he was processed and fingerprinted. He wasn't identified in court as being fingerprinted, but he was identified in court as being the person who was apprehended. So if the defendant was apprehended on that date, again, there's sufficient evidence from which a trier of fact, either the jury or the judge, could have found him guilty. Asking any questions from the courts, the government would submit at this point? Thank you, counsel. Very briefly, the government just conceded that there was no evidence that the defendant at trial had been fingerprinted, and that's our argument. Also, the issue here is not whether there was a voluntary entry. What makes this case different from all other cases is the fact that the government never proved that this defendant had been deported previously. He had been deported previously. The reason why all these other cases are, according to the government, not helpful to us is because in every other 1326 case they argue, there was no doubt that the defendant had been deported. That was a fact that was pretty much conceded in the case. In this case, that's still not in the air. Whether the man, the individual, the human being at trial is the Antonio Rico Gonzalez that was previously deported is the issue. Unfortunately for the government, the district court never took the photograph and looked at the defendant and said, I make a finding of fact that this individual previously deported is the one here today. But finally, Your Honors, the government had an avenue that it did not pursue, so that they wouldn't have to argue typographical error. They could have easily filed a declaration for sentencing purposes with the district court that the polygraph examiner, the fingerprint examiner made a mistake, and him to say to the print examiner it was a typographical error, I indeed printed the defendant. They never did that. That would have taken them 15 minutes. So in this case, what makes it different is there is no proof that the individual at trial was actually previously deported. Thank you, counsel. The case just argued will be submitted.
judges: Reinhardt, Fernandez, Rawlinson